*The Executors of* ROBERT T. LIVINGSTON *against* JOHN
LIVINGSTON.

It is too late to object to the jurisdiction of the Court, at the hearing,
after the defendant has answered, and put himself on the merits,
instead of demurring to so much of the bill as seeks relief.

*Rent* may be recovered in equity, where the remedy has become diffi-
cult or doubtful at law, or where there is perplexity or uncertainty
as to the title, or the extent of the defendant's responsibility.

Uncertain damages cannot be set off in equity, any more than at law.

Therefore, on a bill of discovery, and for an account and payment of
arrears of rent, the defendant is not entitled to be allowed, by way
of *set-off*, damages for the breach of a covenant on the part of the
grantor, to allow him sufficient *common of pasture and estovers*.

Lapse of time operates, in equity, only by way of evidence, as afford-
ing a presumption of payment.

Therefore, where the defendant admitted the original covenant to pay
rent, and did not, in his answer, pretend to any payment; held,
that he could not insist on the lapse of time, being twenty years,
from the date of the covenant to the filing of the bill, as presump-
tive evidence of payment.

THE bill stated, that *Robert Livingston*, proprietor of *Jan. 13th.*
the manor of *Livingston*, on the 22d of *January*, 1722,
executed a perpetual lease to *Peter Cole*, of a farm, of
about 216 acres, at the rent of *one-tenth* of the yearly pro-
duce, four fat hens, &c. That by several devises, which
were specified, *R. T. L.*, the testator, became seized, &c.
and entitled to the rents, &c., and died in 1814, having de-
vised his interest, &c. to the children of *Mary*, the wife of
*Alexander Crofts*, plaintiffs; (her son *R. L. C.* excepted;)
and that, until the youngest child came of age, the rents,
&c. should be taken by the executors, (plaintiffs,) upon
*trust*, &c. That the defendant, as assignee of *Cole*, is in
possession of part of the premises, and has been in posses-

sion since *November*, 1794, and has, during that time, received the rent of the residue of the premises, and applied the same to his own use. That *R. L.*, the proprietor of the said manor, was seized of the *Conine* farm, and two other pieces of land, in the same manor, particularly described, which, by various devises, in like manner, became vested in *R. T. L.*, subject to the leases made of the same, by *R. L.*, or his devisees. That *R. T. L.* died seized thereof, and the defendant had received the rents of those parcels of land, since the death of *R. T. L.*, and for many years before. That a perpetual lease had been given of the *Conine* farm, reserving rent, &c., which had been assigned to the defendant, but no leases had been given of the other pieces of land. *Prayer*, that the defendant may *discover* his title to the farms and premises described, and his right to receive the rents, and the deeds, leases, &c. by which he holds, or claims to hold, the same; and an account of the rents received by him, and how long he has enjoyed the same; " to the end, that such relief may be given to the plaintiffs, as their case may require, and as shall be consistent with equity and good conscience."

The *answer* of the defendant admitted the material allegations in the bill; and stated, that on the 6th of *July*, 1796, he purchased of *R. T. L.*, all his right and interest to the rents of the *Cole Farm*, for the yearly rent of twelve pounds, for ever. That he purchased, in 1795, all the interest of *R. T. L.* in the *Conine Farm*, for 500 pounds, and in the other two tracts, for 300 pounds; and received the rents and profits since the death of *R. T. L.*, and for several years before. The defendant demurred to a further discovery of his title, and refused to exhibit his deeds, as the plaintiff had not waived all forfeitures, &c., the bill being *amended*, and the plaintiff having waived all forfeiture arising from any covenants in the deeds, &c. The defendant further answered, setting forth his deeds, &c.; in which there were covenants on the part of *R. T. L.*, that the de-

fendant, his heirs and assigns, should have the privilege of common, for all commonable beasts and cattle, and liberty to cut and use sufficient timber and wood for building, fencing, fire, and repairs of houses and fences, from such part of the manor of *L.* as was, or, from time to time, should be waste, or in common, or unimproved. The defendant averred, that when he received the deed of the *Cole Farm*, &c. *R. T. L.* owned large tracts of *common*, in the said manor, from which the defendant might have taken *common of pasture and estovers*, for fencing, fuel, &c. but that *R. T. L.* soon after leased, or appropriated the common or waste lands in the manor, and thereby deprived the defendant of his *commons*, &c.; and the defendant prayed, that an account might be taken of the yearly value of the right of commons; insisting, that the liability for those commons exceeded in amount any rent due to the plaintiff; and, also, that *R. T. L.*, at his death, was indebted to the defendant for moneys paid, &c.

The cause was heard on the bill and answer.

*Van Buren*, for the plaintiffs.

*E. Williams*, for the defendant.

THE CHANCELLOR. This is a bill for the discovery of the title of the defendant to certain lands in the manor of *Livingston*, chargeable with rent to the plaintiffs, or to those whom they represent; and it seeks for relief by having the portions of the lands chargeable with rent, located, and an account of the rents due, and for " such relief as the case may require, and as may be consistent with equity and good conscience."

The defendant, in his answer, sets forth the chain of title, and the agreements and deeds under which he claims the lands therein specified and described; and he admits the

*Margin note:*

1820.

LIVINGSTON
v.
LIVINGSTON.

amount of rent chargeable upon each piece of land, and which he agreed to pay to the plaintiffs' testator, and insists upon damages, by way of compensation, and set-off, against the rent in arrear, for the right of common pasturage, and of estovers, in the waste and unappropriated lands of the manor, and of which he has been deprived by the acts and enclosures of the proprietor of the manor.

No proof has been taken in the cause, and the case has been submitted upon the pleadings.

The defendant appears to be indebted to the plaintiffs, as executors of *R. T. Livingston*, deceased, for the rent of ten pounds a year, from the 1st of *January*, 1795, for the *Co-nine* farm, and the rent of seven pounds a year for the same period, for two tracts of land adjoining the same, and the rent of twelve pounds a year, from the 1st of *July*, 1796, for the *Cole* farm. There is no pretence that any part of this rent has been paid, but the defence consists of the following particulars :

1st. That the requisite discovery having been obtained, the bill ought to be dismissed, and the plaintiffs sent to law, where their remedy is complete.

2d. That if an account of the arrears of rent is to be taken, an account ought, also, to be taken of the damages for the loss of the common of pasture, and of estovers, and the same be allowed, by way of set-off, against the rent.

3d. That the rent is to be presumed paid and satisfied by the lapse of time.

1. If the defendant intended to have objected to the jurisdiction of the Court, he should have demurred to so much of the bill as prayed relief. It is a general rule, that he comes too late with this objection at the hearing, after he has, by his answer, put himself upon the merits. (1 *Johns. Cas.* 434. 2 *Johns. Cas.* 431. 10 *Johns. Rep.* 595, 596. 2 *Johns. Ch. Rep.* 369.)

Rent is recoverable in equity, where the remedy has become difficult or doubtful at law, or where the premises are

uncertain. In the case of *The Duke of Leeds* v. *New Radnor*, (2 *Bro.* 338. 518.) the bill was for a fee-farm rent, and the answer admitted the title, and the arrears, but insisted that the land had not undergone any alteration as to boundaries, and that the plaintiff's remedy was at law. The Master of the Rolls thought it was not of course, for equity to interpose in cases of rent, and where the plaintiff has his remedy at law, but he retained the bill for a year. On appeal, Lord *Thurlow* said, there were a great many cases of bills for rent, where the remedy at law was lost, or deficient, or the premises uncertain ; and as the defendants, by their answer, had admitted the right of the plaintiff, he decreed an account of the rent, with costs. The same doctrine was advanced in *Benson* v. *Baldwyn*, (1 *Atk.* 598.) and in the early cases in Chancery, (*Collet* v. *Jaques*, 1 *Chancery Cas.* 120. *Davy* v. *Davy*, 1 *Ch. Cas.* 144. *Cocles* v. *Foley*, 1 *Vern.* 359. *Steward* v. *Bridger*, 2 *Vern.* 516.) In *North* v. *Earl of Strafford*, (3 *P. Wms.* 148.) there was a bill for quit-rents, on the ground of uncertain and perplexed boundaries. There was a demurrer put in to the relief, because the remedy, for the arrears of rent, was at law ; and Lord *King* held the demurrer to be good, but observed, that if there had been no demurrer, the Court, on the hearing, would have relieved. The jurisdiction of the Court was discussed by Lord *Talbot*, in *Holder* v. *Chambury*. (3 *P. Wms.* 255.) That was a bill for arrears of a very small quit-rent by the lord of the manor. No difficulty was stated in the bill to the recovery at law, but the defendant, in his answer, said he was willing to pay. The Chancellor said, a bill was proper where the lands, or the days of payment, were uncertain, but it was vexatious where the remedy was plain and easy at law. "However," he observed, "I do not see that it will be for the defendant's benefit to dismiss this bill, as to this quit-rent, for then the plaintiff would immediately sue for it at law." He, accordingly, directed that

1820.

LIVINGSTON
v.
LIVINGSTON.

1820.

LIVINGSTON
v.
LIVINGSTON.

the arrears of rent be computed *by the Register*, and that the plaintiff's right should be established without costs.

In the present case, it is sufficient to sustain the bill, and decree an account to be taken of the arrears of rent, that the defendant has submitted to the jurisdiction, and has not demurred. But independent of that admission, I cannot consider the resort to this court as vexatious and unnecessary, considering the apparent perplexity and uncertainty of the title, and of the extent of the defendant's responsibility. As the defendant has admitted the amount of rent payable by him for each farm, and the time from which it was to be paid, what utility or justice would there be in sending the plaintiffs, who are executors, to seek a remedy at law, under the covenants, or under the admissions in the answer? According to the cases which have been referred to, this would not be pursuing the established course and practice of the Court.

2. The next point is, whether an account is to be taken of the damages for the loss of the commons.

The answer to this objection is obvious and decisive.

The Court would be obliged to direct an issue, to try whether the defendant had a right of common, after the inclosure and improvement of the waste and uncultivated lands of the manor, and if he had, then whether any, or a sufficient common had been left, and if not, then as to the amount of damages. These are nice and strictly legal questions, and the course has been to refer them to a Court of law. (*Weeks* v. *Staker*, 2 *Vern.* 300. *Arthington* v. *Fawkes*, 2 *Vern.* 356.) Nor is this a case of mutual debt or credit proper for an equitable set-off. It is a case of uncertain and unliquidated damages, even if the doubtful legal right was established. And it is well understood, that uncertain damages are not a proper subject of set-off in this Court, any more than at law. (*Duncan* v. *Lyon*, 3 *Johns. Ch. Rep.* 351.) In *Watts* v. *Coffin*, (11 *Johns. Rep.* 495.) it was held, that a violation of a covenant on the part of the grantor, to allow common of pas-

ture, and of estovers, was no defence to an action for the recovery of rent.

There never was a case of set-off in equity where the damages proposed to be set off against a clear and certain debt, were unliquidated, and depended upon an unsettled legal right, of doubtful aspect.

3. The last objection is of no force. How can the lapse of time be brought in as presumptive evidence of payment, when the defendant, in his answer, admits the original cove-nant to pay, and does not pretend to any payment? Time operates in equity only by way of evidence, and here is only, as to one deed, *twenty* years and a few months, between the date of the covenant and the filing of the bill; and it is short of *twenty-two* years, in the other cases.

I shall accordingly direct a reference to a master to compute the arrears of rent, and the defendant may show, before him, any actual payments of rent, if any have been made. I shall direct the computation to be made without interest, for, as Lord *Nottingham* said, when he made a similar decree, in *Boteler* v. *Massey*, (*Cases temp. Finch*, 241.) " it was the plaintiff's neglect that he did not recover the rent sooner."

Decree accordingly.