Cogan *v.* Frisby.

DAVID S. COGAN *v.* NORMAN FRISBY.

1. EVIDENCE: REGISTRATION: DEED OF GIFT OF PERSONALTY MAY BE RECORDED. —The second section of the Statute of Frauds, Hutch. Dig. 638, provides for the registration of deeds of gift of personal property, and gives efficacy and validity to such deeds when recorded, in certain important legal respects; and

Cogan *v*. Frisby.

hence, a certified copy of such a deed, duly proven or acknowledged, and recorded, is competent evidence in the courts of this State.

2. EXECUTOR AND ADMINISTRATOR: SALES BY: CAVEAT EMPTOR.—An administrator selling property under the order of the Court of Probates, sells only such title as was in his intestate, and the purchaser takes the title at his risk, and will not be discharged from the payment of the purchase-money if the title should prove defective. See *Joslin* v. *Caughlin et al.* 26 Miss. R. 134; *Hutchins et al.* v. *Brooks*, 31 Ib. 430; *George* v. *Bean et al.* 30 Ib. 147.

3. SAME: NEW TRIAL: WHEN NOT GRANTED FOR IMPROPER EXCLUSION OF EVIDENCE.—A new trial will not be granted for the erroneous exclusion of competent evidence, from the consideration of the jury, if it be manifest that the evidence, if introduced, would not have changed the result.

ERROR to the Circuit Court of Jefferson county.  Hon. Stanhope Posey, judge.

*H. F. Ellett*, for the plaintiff in error,

Contended, that the court erred in refusing to grant a new trial, for the following reasons.

1. That the court below erred in ruling out the record of the deed of gift, from A. B. Sims to Martha Jane Sims.  Hutch. Code, 606, 607, §§ 8, 9; Ib. 869, art. 11; 871, art. 16.

2. That in every sale by an administrator, there is an implied covenant that he has authority to sell, and if there was no title in the intestate, the purchaser is entitled to relief, whether the administrator acted in fraud, or only under mistake. *Ives et al.* v. *Pearson*, Freeman Ch. 220; *Cusman* v. *Beasley*, 1 Smedes & M. Ch. 562; 1 Hill's Ch. R. 493; 1 J. J. Marshall, 33; *George* v. *Bean et al.* 30 Miss. 151; *Lile* v. *Hopkins*, 12 S. & M. 299.

That no formal offer to return the slave, was necessary to be shown in this case, as required in *Joslin* v. *Caughlin & Brown*, 27 Miss. 852, because as soon as the purchaser was informed of the defect of title, a cancellation of the sale was agreed upon, and his subsequent possession of the slave was in pursuance of that agreement.

3. That the sale was cancelled by agreement of the parties in the summer of 1854.

4. That the sale not having been reported and confirmed, until January, 1856, two years after it was made, such report and con-

firmation are void, and the sale itself is consequently void, and no title passed to the purchaser. And this being by the neglect of the administrator, he cannot recover. *Bland* v. *Muncaster*, 24 Miss. 62; *Calhoun* v. *Rail*, 26 Ib. 414; *Hoel* v. *Coursery*, 26 Ib. 511, 520.

*Thomas Reed*, on same side contended,

First. That the deed of gift ought to have been permitted to be read to the jury as evidence, because it was properly of record. Hutch. Code, 605, §§ 4, 8; Ib. 606, §§ 8, 9.

Second. Title forms an integral part of sales by administrators, either absolute or implied. *George* v. *Bean et al.* 30 Miss. 151; 10 S. & M. 476; 26 Miss. 134; 25 Ib. 121.

Third. That the reasons laid down in the adjudicated cases, why the property should not be offered to be returned, does not apply to the case at bar. First. Because the agreement to cancel this sale, on the ground of mistake, by the plaintiff, waived the necessity of an offer to return. Second. Because the administrator's intestate had no right to the possession, and could take no further act in regard thereto. *Joslin* v. *Caughlin*, 10 S. & M. 476; 26 Miss. R. 134; 30 Ib. 502; *Bohannon* v. *Fulton*, 31 Ib. 348.

Fourth. The case of *Cabiness* v. *Clark*, 4 George, 423, reviewed, and shown not to militate against the principles advocated for reversing this cause.

*G. H. Wilcox*, for defendant in error,

Contended, that the transcript of the deed of gift of A. B. Sims to Martha Jane Sims, was properly excluded from the jury by the court below.

It was not a record: it was not such an instrument as may be recorded under our registry laws. Rev. Code, 1857, ch. 36, § 4, art. 19, 20, 21, 22. And, if spread upon the record, it would be by no legal warrant, and would not, in legal intendment, thereby become "a record," a transcript of which might be read in evidence.

It is not necessary, however, to discuss this question, for the facts proved by the deed constituted no defence to the action. It is in evidence in the cause, that the sale of the slave Nancy, by defendant in error, as administrator of Thomas H. Frisby, deceased,

was accompanied by delivery, and that the slave remained in the possession of David S. Cogan, the purchaser, until her death, without any tender of return to the administrator.

An administrator, at the sale of the goods and chattels of his intestate, does not warrant title or soundness. "In the sale of property at an administrator's sale, the doctrine of *caveat emptor* is applied with great strictness." *Joslin* v. *Caughlin & Brown*, 26 Miss. Rep. 184. See also *Otts* v. *Alderson*, 10 S. & M. 476; 31 Miss. Rep. 430.

But if the sale was absolutely void, yet so long as there was no offer to return the slave to the plaintiff, Cogan could not be countenanced in resisting the payment of his note for the purchase-money. *Joslin* v. *Caughlin & Brown*, 27 Miss. Rep. 852; 31 Ib. 348; Ib. 423.

Even if fraud were practised by the administrator, and Cogan was deceived thereby, he would be driven to his action directly against the administrator, and could not set it up in defence to a suit upon the note. *George* v. *Bean*, 30 Miss. Rep. 147.

These decisions accord with rules as old as the common law. "A purchaser without covenants, takes all the risks of title." Thomas's Coke, 355; 1 Johns. Ca. 213; Ib. 523.

HANDY, J., delivered the opinion of the court.

This action was brought upon a writing obligatory, executed by the plaintiff in error, for the consideration of a slave sold by the defendant in error, as administrator of Thomas H. Frisby, deceased, under an order of the Probate Court, and purchased by Cogan, the plaintiff in error.

In behalf of the defendants in the court below, it was shown that the slave sold had been the property of one Sims; and for the purpose of showing that the slave was not the property of the plaintiff's intestate, Thomas H. Frisby, the defendants offered in evidence a deed of gift executed by Sims on the 6th April, 1839, duly executed, acknowledged, and recorded in the office of the probate clerk of the proper county, conveying the slave to the wife of the plaintiff's intestate, the defendants offering to read the deed from the record book of deeds in the probate clerk's office. To the reading

of the deed from the record book the plaintiff objected, and the court sustained the objection, the defendants excepting.

The defendants then introduced one Allen as a witness, who testified that he purchased a slave of the plaintiff, as administrator, at the same sale at which Cogan purchased the slave involved in this case, in January, 1854; that in the summer of that year, the plaintiff came to witness's house, and told him that he had sold these slaves by mistake, having discovered that they did not belong to the estate of Frisby, and that neither witness nor Cogan had got any title to the slaves they purchased; and that he wanted to cancel the sale and take the slaves back; that witness at first refused, and that plaintiff "then gave witness to understand" that he had seen Cogan, who had agreed to give back the slave which he had purchased, and that witness then gave up the slave which he had bought; that the slave for which the note sued on was given, continued in Cogan's possession until the fall of that year, when she died. Also one Flowers, who testified that some time after the sale in January, 1854, he heard the plaintiff say, in the presence of Cogan and others, that the slaves were sold by mistake as to the title; that they did not belong to the estate of Frisby, the intestate, but to the estate of Mrs. Frisby.

It was also proved that Mrs. Frisby died before her husband, the plaintiff's intestate, leaving one child, which was living at the time of the trial.

The defendants also read in evidence the proceedings of the Probate Court, showing a petition by the plaintiff for the sale of sundry slaves of the estate, including the one here in question, and an order for the sale thereof, made at December term, 1853; also the report of sale of the slaves, dated and sworn to on the 3d January, 1856, showing the sale of the slave in question to Cogan on the 9th January, 1854, and of another slave to another person, and stating that certain other named slaves were sold at the same time to Cogan, but were ascertained not to be a part of the estate, and to belong to the estate of Mrs. Frisby, and therefore that the sale of these slaves was cancelled.

The plaintiff then read in evidence the order of the Probate Court, confirming this report of the sale.

The first error assigned, is the exclusion of the deed of gift offered

to be read in evidence, in behalf of the defendants, from the record book in the probate clerk's office.

The ground of objection to this evidence, and upon which the ruling of the court is justified is, that there is no law in this State authorizing the registration, in the probate clerk's office, of a deed of gift of personal property ; and hence, that the record book was not evidence of the deed.

It is true that the statute " concerning conveyances," does not expressly authorize the registration of all deeds conveying personalty. The third section of the act authorizes all *deeds of settlement upon a marriage, for* " *slaves, money, or other personal thing,*" and " *all deeds of trust and mortgages whatsoever,*" to be recorded. And the fourth section applies to " deeds respecting the title of personal property," " *which, by law, ought to be recorded.*" Hutch. Code, 605. The eighth and ninth sections require the clerk to record in proper books, " all deeds, bonds, mortgages, or other instruments of writing, of or concerning real or personal estate within this State, which may be acknowledged or proved, and certified according to law, and shall be delivered to him to be recorded," &c. Ib. 606. These provisions of the act concerning conveyances, would not, taken alone, embrace a deed of gift of personalty, like the one under consideration.

But the second section of the Statute of Frauds provides that " if any conveyance be of goods or chattels, and be not on consideration deemed valuable in law, it shall be taken to be fraudulent within this act, unless the same be by will, duly proved and recorded, *or by deed in writing acknowledged or proved ;* and *such deed,* if the same be for real estate, shall *be acknowledged or proved,* and *recorded* in the county where the land conveyed is situated ; and if for personal property, then in the county where the donee shall reside, or the property shall be ; and the proof or acknowledgment, in either case, shall be taken or made and certified in the same manner as conveyances of land and tenements are by law directed to be acknowledged or proved, and *recorded within three months* after the execution thereof," &c. Hutch. Code, 638. This is a clear recognition of the right to prove or acknowledge a deed of gift of personalty, and to have it recorded in the same manner as deeds for real estate are directed to be acknowledged or proved,

and recorded; for to such a deed, so acknowledged or proved and recorded in conformity to law, it gives efficiency and validity in certain very important legal respects. It has direct reference to the provisions of the "act concerning conveyances," providing that, if such deed of gift shall be acknowledged or proved, and recorded as directed by that act, the deed shall be effectual for the purposes of the act. And it must be construed as though it was a part of the "act concerning conveyances." The provisions of that act are, therefore, applicable to a deed of gift of personalty; and by the eighth and ninth sections above cited, the mode in which all deeds concerning real or personal estate are to be recorded, is prescribed, and the deed in question was recorded in conformity to that act, and subsequent amendatory acts regulating the matter.

The deed in question was, therefore, properly recorded; and the objection to the record should not have been sustained.

The second error assigned is to the granting of the instructions in behalf of the plaintiff, which are as follows:

1. That if they believe from the evidence that the note sued on was given by the defendants for the purchase-money of a slave, sold by plaintiff, as administrator of Thomas H. Frisby, deceased, under an order of the Probate Court regularly made, and purchased by defendant Cogan, that said sale was made in good faith, that the possession of said slave was delivered to said purchaser by the plaintiff, and that Cogan retained uninterrupted and undisputed possession of said slave until her death, then, for the purpose of this trial, the absolute title of said slave is immaterial, and if no other defence appears, they must find for the plaintiff.

2. An administrator, by the act of sale under an order of a court of competent jurisdiction duly made, of property in his possession, as administrator, does not thereby warrant the title or the soundness of the property sold; and if the jury believe from the evidence that the sale of the slave Nancy, by the plaintiff as administrator, to Cogan, was made in good faith and under competent authority, and was accompanied by delivery, and was followed by the uninterrupted and undisputed possession of said slave by Cogan, up to the time of the death of the slave, then a paramount outstanding title to the slave, if such be proved, is no defence to this action, &c.

The principle has been frequently sanctioned by this court, that an administrator selling property by authority of an order of the Probate Court, sells only such title as was in his intestate, and the purchaser takes the title at his risk. *Mellon* v. *Boarman*, 13 S. & M. 100. And accordingly it is well settled here, that the rule *caveat emptor*, is applicable with great strictness to all such sales. *Joslin* v. *Caughlin et al.* 26 Miss. 147; *Hutchins et al.* v. *Brooks*, 31 Ib. 430; *George* v. *Bean et al.* 30 Miss. 147. It follows that the purchaser at such a sale, purchases at his peril, as a purchaser at sheriff's sale, and that he cannot be discharged from his contract because of the defective title of the intestate.

This rule may seem to operate as a hardship upon such purchasers. But they have the same means of protecting themselves as purchasers at sheriffs' and other judicial sales, by an examination into the title before the purchase. If they fail to do so, they are no more entitled to be discharged from their contract in the one class of cases than in the other. In both cases alike, the loss would be but the consequence of their own neglect. On the other hand, if the mere defect of title were allowed to invalidate such sales, delay and confusion in the settlement of estates would most probably, if not necessarily, be the result. It would open the door to unjust and unauthorized conduct on the part of administrators, involving estates in litigation and complication, attended with delays and expense, and would, therefore, tend to interrupt the due and faithful administration of estates. Its effect would be highly prejudicial to the public good, and we, therefore, think the rule held by this court as founded in good reason.

The principle of the instructions here complained of, is in accordance with this view, and the objection taken is not tenable.

The last ground of error is, that the verdict is contrary to the law and the evidence; and it is insisted, that the evidence shows that the sale was cancelled by agreement of the plaintiff; and, under the rule upon that point, stated in the second instruction in behalf of the defendants, that the verdict should clearly have been for them.

The court instructed the jury in effect, that, if the plaintiff agreed to cancel the sale and it was cancelled, the note was thereby dis-

charged.    Conceding this instruction to be proper, does the evidence clearly show a rescission ?

It appears that the plaintiff, in the summer of 1854, told Allen that he had sold the slaves by mistake, and that they did not belong to Frisby's estate, and that neither Allen nor Cogan got any title by their purchases, and that the plaintiff gave Allen to understand that Cogan had agreed to give back the slaves he had purchased.

The evidence shows that the plaintiff did cancel the sale of certain of the slaves purchased at the sale, on account of the defective title here set up as a defence.    But it does not appear that the sale of the one, for which the note sued on in this case, was given, was cancelled.    And the circumstances would appear to show the contrary.    The note was not given up, and Cogan retained possession of the slave.    These facts go to show that the contract as to this slave was not rescinded; and they are not explained by evidence.

The cancellation of the sale as to the other slaves, which it would appear was in the summer of 1854, leaving the note given for the price of the slave involved in this case outstanding, and the fact that that slave remained in the possession of Cogan after the alleged cancellation, without explanation, are strong evidence to show that no cancellation took place as to the slave for which this note was given, and to justify the jury in coming to the conclusion that the sale as to that slave was not intended to be cancelled; and these circumstances would have warranted the jury in believing that the declarations of the plaintiff with regard to the cancellation, had reference to the slaves whose sale was really cancelled by the plaintiff; or if this slave was referred to, that the cancellation was never effected.

We would not, therefore, be warranted in holding that the jury found clearly against the evidence, in coming to the conclusion that the sale as to the slave for which this note was given, was cancelled; and this ground of error is not sustained.

It follows from these views of the case, that although the record of the deed offered by the defendants, was improperly rejected, yet that upon the whole case, no prejudice in law was done to them in consequence of that ruling of the court, and that if it had been received in evidence, it could not have changed the result of the case; and hence the judgment must be affirmed.