## E. RICHARDSON et al. vs. BETTIE B. BROOKS et al.

1. FRAUD : *Administration. Sale of realty. Tax title. Statute of limitations.*
If an administrator suffers lands in his possession to be forfeited for taxes, and then repurchase it, the money, if refunded, would go to him or his representatives. The Revised Code, § 2173, applies to *invalidities* which have crept into probate court sales, made in good faith, where the purchase money has been paid.

2. SAME : SAME : *Multifariousness.*
Where a bill to recover lands is, as to all the lands, by the same parties against the same parties, and as to the same subject-matter, the complainant has a right to unite the entire demand in one suit, and the bill is not multifarious.

3. SAME : *Equity jurisdiction.   Remedy at law.   Fraud.*
The legal remedy must be full, adequate, and unembarrassed.   The *possibility* of relief at law is not sufficient to defeat the jurisdiction of equity, and especially will equity take jurisdiction if complainant's legal remedy has become embarrassed by the fraud of defendant.   A court of equity cannot inquire into the proceedings of the probate court with a view of correcting them; but in the investigation of the acts of a trustee, with a view of declaring him or his privies clothed with the legal title to property for the benefit of the *cestui que trust,* it will not stop the pursuit because it leads into a court of probate.   Fraud vitiates everything, and may be collaterally attacked, and this applies to the judgments and decrees of all courts.

APPEAL from the Chancery Court of *Washington* County.

Hon. E. STAFFORD, Chancellor.

The material facts in this case are very fully set out in the opinion of the court.

[The reporters find no brief on file for the appellants.]

*L. B. Valliant*, for appellees :

If the remedy at law be difficult or embarrassed, or not as complete as equity affords, the chancery court will afford the relief, 4 Johns. Ch. R., 290 ; 1 Yerger, 360.   It is not enough that there is a remedy at law ; it must be plain and adequate. Boyce, Ex'r, *v.* Grundy, 3 Peters, 215.   The bill does not seek to correct the action of the probate court.   See 14 S. & M., 92 ; ib., 201.

If the personal estate becomes insufficient to pay the debts, in consequence of a devastavit *or neglect of duty by the administrator*, the heir at law can insist on this as a defense against the sale of the lands descended.   Turner *v.* Ellis, 24 Miss., 180.   See, also, Stegler *v.* Porter, 42 Miss., 449 ; Hollman *v.* Bennett, 44 Miss., 322.

An administrator has no right to sell land to pay a debt barred by the statute.   Turner *v.* Ellis, 24 Miss., 173 ; Moody *v.* Harper, 38 Miss., 599 ; Moore *v.* White, 6 Johns. Ch. R., 372.   No man is a creditor unless his claim is valid and subsisting.   Pollock *v.* Buie, 43 Miss., 156.

The only debt against the estate was that of Mrs. Boyce. It was not created in the life-time of the deceased, and the land could not be sold for it.   Farley, Jury & Co. *v.* Hord, 45 Miss., 96.

An administrator has no right to support a family out of the estate. Washburne *v.* Phillips, 5 S. & M., 600; Jones *v.* Conn, ib., 751.

Courts of chancery have jurisdiction over the property of infants. Story's Eq:, § 1337. See, also, § 511; 1 Maddox Ch., 91; Nelson *v.* Allen & Harris, 1 Yerger, 360–372. Linch *v.* Rotan, 39 Ill., 19; Carmichael *v.* Hunter, 4 How. (Miss.), 308–315; Williams *v.* Duncan, 44 Miss., 383. The provisions of the Code, § 2173, are invoked. To give effect to this, three facts must concur: 1. The attack on the title must be solely on the ground of the invalidity of such sale. 2. The sale must have been made in good faith. 3. The purchase money paid. There is not only not a concurrence of all three conditions of the statute, but neither condition is present.

CHALMERS, J., delivered the opinion of the court.

The case stands on bill and demurrer. The case made by the bill is briefly and substantially this: Complainants are minor heirs of James M. Brooks, a citizen of Washington county, who died in 1858, leaving a very large real and personal estate. His widow, the mother of complainants, administered on the estate. In a few years she intermarried with one Boyce. Moved and instigated by him she surrendered her letters and rendered a final settlement of her trust, which was grossly unjust and fraudulent to the estate in propounding false and fictitious claims against the same, made up mostly of probated debts which she had paid off with the assets of the estate, and propounded as having been paid by herself individually, and showing in this, upon its face, a balance due her of $40,000. Boyce then qualified as administrator *de bonis non* in 1862.

In 1866 two hundred and fifty acres of land, including the homestead and building, were laid off as Mrs. Boyce's (late Brooks) dower. At the same time Boyce propounded his first annual account, on a basis of Confederate money, showing himself indebted to the estate in this worthless currency to the amount of $8,100, which amount in Confederate notes he

paid into court. At the same time he procured leave to work the land of the estate outside of the dower for the ensuing year, at a rental of $5,000. Twelve months afterwards he presented his second annual account, in which, by the allowance to himself of improper and in some instances false and fraudulent credits, he showed himself indebted to the estate in the inconsiderable sum of $280, whereas he was justly indebted more than $4,000. Immediately thereafter he filed his petition suggesting the insolvency of the estate and praying sale of the land. The schedule of debts exhibited with this petition amounted to $72,000, but was made up of the false and fraudulent balance of $40,000 claimed to be due the petitioner's wife, the former administratrix, and, as to the balance, was composed very largely of claims long since barred. An inconsiderable portion only of the aggregate sum was really due by the estate. Shortly before decree was to be obtained Boyce resigned his trust and procured the appointment of his lawyer, who was then engaged in carrying through the proceedings for sale. Said lawyer was not a creditor of the estate, nor of kin to the intestate. Mrs. Boyce (late Brooks) having died pending these proceedings, Boyce procured himself to be appointed guardian of complainants, his step-children, who were then minors of tender years, and citation was served upon him, as such guardian, to appear and show cause against a petition set on foot by himself, and then being prosecuted by his legal adviser and retained attorney.

A decree was rendered directing a sale of the land on credit of one, two, and three years, but subsequently, on the petition of the new administrator, this was changed and the land ordered to be sold for cash. Two hundred and forty acres of land, including the homestead, were by the court ordered not to be sold, but to be reserved for the children. The land was sold, and bought by Boyce for $1,800, this being the same land which two years previously he had cultivated under the orders of the court at a yearly rental of $5,000. It is charged that Boyce, before the sale, stated to a half-brother of complainants, who had just attained majority and who was the

only relation they had in the state, that he intended to buy the land for the heirs, and that he thus induced said half-brother, who was himself an heir, not to oppose his schemes. This half-brother is made a defendant to the bill.

In 1868, while Boyce was renting the land and in possession of it, he suffered it all, including the homestead, to be forfeited for taxes. It was bought in by his attorney, who subsequently conveyed it by quit-claim to him, including the homestead.

Complainants aver that they do not know whether the $1,800 of purchase money was paid to the administrator or not, but aver that, even if it was, the whole sale was procured by fraud.

There are alleged to have been many irregularities, defects, and omissions in the probate court proceedings, which would have rendered the decree erroneous and voidable, if not void. In eighteen months after his purchase, to wit, in March, 1871, Boyce sold the whole plantation to defendant, E. Richardson, for $15,000. He only warranted the title as to that portion outside of the homestead. He left the state immediately thereafter, went to Kentucky and there died, leaving no estate here, nor any heirs nor personal representatives, so far as complainants are advised. Richardson subsequently sold to Cochran and Mary Ella Nutt, both of whom are made defendants. It is charged that all of these vendees had actual knowledge of the fraudulent acts and purposes of Boyce, and of the trust character of his relations to the parties.

The prayer is for a cancellation of all the various deeds, that defendants be declared trustees for complainants, for an account as to mesne profits, and for possession of the land. If this be denied as to all the lands, then it is specially prayed as to the homestead. The grounds of demurrer are that there is a complete remedy at law, that the bill is multifarious, that it is barred by § 2173 of Code, and that there is no offer to return the money paid out to redeem the tax title.

We will consider these grounds in their inverse order:

1. With regard to the tax title, it is charged to have been

but one of the fraudulent devices resorted to to strip complainants of their inheritance.  The land is alleged to have been intentionally forfeited while in Boyce's possession, and at a time when he was largely indebted to the estate, and his re-purchase, therefore, would enure to the benefit of creditors or heirs.  Even if the money should be refunded it would not go to these defendants, but to Boyce's representatives.

2.  Section 2173 of Code applies by its terms to *invalidities* which have crept into probate court sales, made in good faith, where the purchase money has been paid.  This sale is alleged to have been conceived, instigated, and carried on by fraud for a wicked purpose.  It does not appear that the purchase money was paid ; on the contrary, a doubt is expressed as to whether it was, though the complainants aver ignorance on the subject. Under such circumstances the payment, if made, must be set up by plea or answer.

3.  The charge of multifariousness is not well taken.  It is true that defendants' title as to a portion of the land rests on the administrator's sale, and as to the remainder on the tax deed, and that the bill attacks both of these conveyances.  But complainants claim all the land by a common title, as heirs of their father, and cannot be prejudiced by the different claims, as to the different portions, of the parties in possession.  The suit as to all the lands is by the same parties against the same parties, and as to the same subject-matter.

There can be in such case no doubt of the right to unite the the entire demand in one suit.  Gains *v.* Chew, 2 How. (U. S.), 602 ; Comstock *v.* Raiford, 1 S. & M., 423 ; Morris *v.* Dillard, 4 S. & M., 636.

The ground of error most earnestly pressed is that complainants' remedy is at law ; and by this is meant as well the action of ejectment as the right of appeal from the decree of the probate court, or the right by bill of review to surcharge and falsify the accounts of the administrator and re-open the decree of sale.

It is difficult to see how, in an action of ejectment, the

various allegations of the bill as to the fraudulent acts of Boyce, to some extent *dehors* the record, could be made to appear. It would certainly be well-nigh impossible in such a proceeding to establish the falsity of the pretended debts for which it is alleged that the land was sold, and which falsity constitutes the principal ground of the relief prayed. The *possibility* of the relief at law is not sufficient to defeat the jurisdiction of equity. The legal remedy must be full, adequate, and unembarrassed. 4 Johns. Ch., 290; Boyce *v.* Grundy, 3 Peters, 215; Barnes *v.* Lloyd, 1 How., 584.

Especially will equity take jurisdiction if complainants' legal remedy has become embarrassed by the fraud of defendants. City of Natchez *v.* Vaudevelde, 2 George, 706.

The objection that the complainants should have proceeded by appeal from the probate court, or by bill of review should have attacked the proceedings therein, rests upon an entire misconception, as we think, of the scope of the bill. The bill does not attack the probate court proceedings with any view of reversing them, or of surcharging and falsifying the accounts of the several administrators. Its whole scope is to fix the character of trustee on the holders of the land, and its whole gravamen is fraud. It sets forth the character under and by virtue of which the patrimony of complainants came into the possession of Boyce, and traces the successive steps of alleged fraud by which this faithless fiduciary robbed them of it and perverted the legal title to himself. It charges that the vendees, the defendants, had notice of these things.

It is true that the frauds charged against Boyce were committed as administrator, in his dealings with the probate court, and that, therefore, the records of his administration are referred to and annexed as an exhibit to the bill; but this is only as furnishing evidence of the fraud, and not with a view of asking any action upon the proceedings themselves.

If he had possessed himself of the estate by any fraudulent practices not connected with his administration, the bill, of course, would be maintainable. We do not think it is any less

so because he has used his fiduciary position to promote his. scheme, nor can he defeat the equity jurisdiction by taking· shelter beneath the adjudications of the probate court.

A court of chancery cannot, sitting as such, inquire into the· probate court proceedings with any view of correcting them, but in the investigation of the acts of a trustee, with a view of declaring him or his privies to be clothed with the legal title to property for the benefit of the *cestui que trust*, it will not. stop the pursuit because it leads into a court of probate. One court may look into the records of another of concurrent. jurisdiction, or even of exclusive jurisdiction, not with a view of revising or amending them, but for the purpose of seeing whether rights claimed to have been obtained there were obtained through fraud. Fraud vitiates everything, and may be collaterally attacked, and this applies to the judgments. and decrees of all courts. Plumer *v.* Plumer, 36 Miss., 185 ; Christian *v.* O'Neil, 46 Miss., 670.

It is urged by counsel for appellants though the bill abound. in charges of fraud alleged to have been committed in the· probate court proceedings, yet that an inspection of the tran-- script of these proceedings, as annexed to the bill, shows that. in fact no frauds were committed.

We have looked somewhat into this transcript, and, without. having made a very exhaustive examination of it and without desiring to express any opinion upon the merits, we must say that there are a good many things that require at least an answer, if not explanatory proof.

The decree overruling the demurrer is affirmed, with leave. to defendants to answer in ninety days.